UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


GREGORY DINGLE,

            Petitioner,

vs.                                    Case No. 3:17-cv-490-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

            Respondents.
_____

## ORDER

### I.  INTRODUCTION

In his Petition for Writ of Habeas Corpus (Petition) (Doc. 1),

Petitioner Gregory Dingle is challenging a Duval County judgment of

conviction for multiple offenses: home invasion robbery with a

firearm (4024); battery on a person sixty-five years or older

(4024); home invasion robbery (4775); home invasion robbery with a

firearm (3886); and, armed robbery with a firearm (4414).

Petitioner raises a claim of ineffective assistance of trial

counsel resulting in an involuntary plea.  Petition at 5.

Respondents filed an Answer in Response (Response) (Doc. 15).[1]

_____

    [1] The Court hereinafter refers to the Exhibits (Doc. 15) as
"Ex."  Where provided, the page numbers referenced in this opinion
are the Bates stamp numbers at the bottom of each page of the

Petitioner filed a notice that he does not intend to file a reply (Doc. 19). <u>See</u> Order (Doc. 7). Thus, this case is ripe for review.[2]

## II.  EVIDENTIARY HEARING

Petitioner has not demonstrated a need for an evidentiary hearing or entitlement to one. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." <u>Shoop v. Hill</u>, 139 S.Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection

---

exhibit. Otherwise, the page number on the particular document will be referenced.

[2] The Petition is timely filed. <u>See</u> Response at 6-7.

of constitutional rights." Id. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Virginia v. LeBlanc, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may grant habeas relief:

> only when the adjudication of a federal
> constitutional claim "on the merits in State
> court proceedings" either "resulted in a
> decision that was contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States" or
> "resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d). "This
> narrow evaluation is highly deferential, for a
> state court's determination that a claim lacks
> merit precludes federal habeas relief so long
> as fairminded jurists could disagree on the
> correctness of the state court's decision."
> Morrow v. Warden, 886 F.3d 1138, 1146-47 (11th
> Cir. 2018) (alteration adopted) (internal
> quotation marks omitted) (quoting Harrington
> v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770,
> 178 L.Ed.2d 624 (2011)). The decision of a
> state court is "contrary to" federal law only
> if it "contradicts the United States Supreme
> Court on a settled question of law or holds
> differently than did that Court on a set of
> materially indistinguishable facts." Cummings
> v. Sec'y for Dep't of Corr., 588 F.3d 1331,
> 1355 (11th Cir. 2009) (citation and internal
> quotation marks omitted). The decision of a
> state court "involves an unreasonable
> application of federal law if it identifies
> the correct governing legal principle as
> articulated by the United States Supreme
> Court, but unreasonably applies that principle
> to the facts of the petitioner's case,
> unreasonably extends the principle to a new

context where it should not apply, or
unreasonably refuses to extend it to a new
context where it should apply." <u>Id</u>. (citation
and internal quotation marks omitted). "The
question ... is not whether a federal court
believes the state court's determination was
correct but whether that determination was
unreasonable—a substantially higher
threshold." <u>Id</u>. (citation and internal
quotation marks omitted).

<u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d 1314, 1321 (11th

Cir. 2018).

A district court is charged with reviewing the conclusions of

the state court, deferring to the state court decisions, and

granting habeas relief only if the adjudication of the claim

resulted in a decision that was contrary to, or involved an

unreasonable application of Supreme Court precedent. "Clear error

will not suffice." <u>Virginia v. LeBlanc</u>, 137 S.Ct. at 1728. This

formidable barrier to habeas relief is very difficult to overcome

as highly deferential AEDPA deference is due, unless the petitioner

shows the state court's ruling was so lacking in justification that

there was error well understood and comprehended in existing law

beyond any possibility for fair-minded disagreement. Thus, if some

fair-minded jurists could agree with the lower court's decision,

habeas relief must be denied. <u>Meders</u>, 911 F.3d at 1351.

When reviewing a state court's decision, AEDPA deference is

not based on the "specificity or thoroughness" of the decision;

indeed, the "no-grading-papers, anti-flyspecking rule remains the

law of the circuit." <u>Meders</u>, 911 F.3d at 1350. Consequently, a

district court is not obliged to "flyspeck the state court order or grade it." <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d at 1345.  Also, AEDPA deference is given even if no rationale or reasoning is provided.  <u>Meders</u>, 911 F.3d at 1351 (citing <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011)).

A district court should afford a presumption of correctness to state trial and appellate courts' factual determinations.  <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 568 U.S. 1233 (2013).  Thusly, "the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1147 (11th Cir. 2018), <u>cert</u>. <u>denied</u>, No. 18-6409, 2019 WL 659905 (U.S. Feb. 19, 2019).

The Supreme Court of the United States has imparted its wisdom in employing AEDPA review:

> "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" <u>Wilson v. Sellers</u>, --- U.S. ----, 138 S.Ct. 1188, 1191-92, --- L.Ed.2d ---- (2018) (quoting <u>Hittson v. Chatman</u>, --- U.S. ----, 135 S.Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg, J., concurring in denial of certiorari)). The Supreme Court recently held that, when the relevant state court decision is not accompanied by a reasoned opinion explaining

why relief was denied, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." <u>Id</u>. at 1192. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision." <u>Id</u>.

<u>Johnson v. Sec'y, Dep't of Corr.</u>, 737 F. App'x 438, 441 (11th Cir. 2018) (per curiam).

If the last state court to decide a federal claim provides an explanation for its merits-based decision in a reasoned opinion, the district court simply reviews the specific reasons given by the state court and defers to those reasons, if they are reasonable. But, if no explanation is provided, for example, the opinion simply states affirmed or denied, the district court should "look through" the unexplained decision to the last related state-court decision that provides relevant rationale. The district court presumes the unexplained decision adopted the same reasoning as the lower court, however, this presumption is not irrebutable, as strong evidence may refute it. <u>See</u> <u>Kernan v. Hinojosa</u>, 136 S.Ct. 1603, 1606 (2016) (per curiam). In an effort to rebut the presumption, the state may attempt to show the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." <u>Wilson v. Sellers</u>, 138 S.Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises a claim of ineffective assistance of counsel.  To prevail on his Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  <u>See</u> <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either of the components).

"For a third of a century[,]" a counsel's performance has been considered deficient only if counsel's performance is outside the wide range of professionally competent assistance.  <u>Meders</u>, 911 F.3d at 1348.  In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense.  In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable

under § 2254(d) is all the more difficult. The
standards created by Strickland and § 2254(d)
are both highly deferential, and when the two
apply in tandem, review is doubly so." Id.
(citations and quotation marks omitted). "The
question is not whether a federal court
believes the state court's determination under
the Strickland standard was incorrect but
whether that determination was unreasonable -
a substantially higher threshold." Knowles v.
Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411,
1420, 173 L.Ed.2d 251 (2009) (quotation marks
omitted). If there is "any reasonable argument
that counsel satisfied Strickland's
deferential standard," then a federal court
may not disturb a state-court decision denying
the claim. Richter, - U.S. at -, 131 S.Ct. at
788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014), cert.

denied, 135 S.Ct. 2126 (2015); Knowles v. Mirzayance, 556 U.S. 111,

123 (2009). Thus, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th

Cir. 2004), cert. denied, 544 U.S. 982 (2005). As a result,

"[s]urmounting Strickland's high bar is never an easy task."

Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

With respect to an ineffective assistance challenge to the

voluntariness of a guilty or no contest plea, a petitioner must

show there is a "reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on

going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Of

note, ineffective assistance of counsel may also require that a

plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See id. at 56 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

This Court recognizes that,

> in a post conviction challenge to a guilty plea:
>
>> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.
>
> Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted); see also United States v. Gonzalez-Mercado, 808 F.2d 796, 799-800 and n. 8 (11th Cir. 1987) (while not insurmountable, there is a strong presumption that statements made during a plea colloquy are true, citing Blackledge and other cases).

Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2446370, at *2 (N.D. Fla. May 17, 2011) (Report and Recommendation), report and

recommendation adopted by Bryant v. McNeil, No. 4:09CV22-SPM/WCS, 2011 WL 2434087 (N.D. Fla. June 16, 2011).

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

Ground one of the Petition states: "counsel rendered ineffective assistance by coercing/inducing Petitioner into pleading guilty rendering said plea involuntary in violation of his constitutional 6th Amendmen[t.]" Petition at 5.  Petitioner presents the following supporting facts.  First, Petitioner alleges his counsel misadvised him that the court would not impose the maximum penalty in exchange for a guilty plea.  Id.  In fact, Petitioner contends his attorney told him he could plead guilty before the court and "receive possibly less, but no more than five (5) years above that which his codefendant (Eugene Simon) received, who was sentenced to twenty[-]five (25) years[,]" and be out with good behavior and gain time credits in twenty-six years or less. Id.

Petitioner also contends his counsel failed to inform him that he faced three, consecutive ten-year minimum mandatory penalties. Id.  Petitioner asserts that he was not aware that even if he were to plead guilty and the court showed leniency, he would have to serve at least thirty years in prison.  Id.  Petitioner claims that had he known of the legal significance of the mandatory terms, he would have proceeded to trial on the charges.  Id. at 6.

Petitioner also claims his attorney told him that the court would have no discretion to sentence Petitioner to anything but

life if Petitioner were to go to trial and be found guilty.  <u>Id</u>.

Petitioner alleges, based on this advice, he thought his penalty

would be more harsh if he went to trial.  <u>Id</u>.  He states he would

have proceeded to trial on the charges had he known the facts

concerning the consequences of his plea.  <u>Id</u>.  Petitioner states

counsel threatened a harsher sentence if Petitioner chose to go to

trial, and using these threats, she coerced and/or induced

Petitioner to forego his right to trial.[3]  <u>Id</u>. at 7.

Respondents argue a portion of ground one is unexhausted and

procedurally defaulted, that is, that portion of the claim where

Petitioner asserts his attorney misadvised him that if he proceeded

to trial the court would have to impose a life sentence.  Response

at 16, 21-22.  In addressing the exhaustion question, the Court

must ask whether the claim was raised in the state court

proceedings and whether the state court was alerted to the federal

nature of the claim:

> Before seeking § 2254 habeas relief in
> federal court, a petitioner must exhaust all
> state court remedies available for challenging

---

[3] Although not raised as a separate ground for relief,
Petitioner alleges the trial court failed to fully advise him of
all of the consequences of his open plea during the plea colloquy,
in violation of the Due Process Clause of the Fourteenth Amendment.
Petition at 7.  In particular, Petitioner asserts that, although
the court informed him of the maximum penalty, it failed to advise
him of the mandatory minimum penalty he would receive, thus
depriving him of due process of law.  <u>Id</u>.  The court will address
this matter in the context of the ineffective assistance of
counsel/involuntary plea claim, as that is the claim Petitioner
actually exhausted in the state courts, not a due process claim
based on the trial court's actions or omissions.  <u>See</u> Petition,
Ground One, at 5.

his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Baldwin v. Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in <u>Baldwin</u> "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"—namely, giving the state courts "a meaningful opportunity" to address the federal claim. <u>McNair</u>, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state-law claim." <u>Kelley</u>, 377 F.3d at 1343–44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-52 (11th Cir. 2012), <u>cert</u>. <u>denied</u>, 568 U.S. 1104 (2013).

Upon review, Petitioner exhausted the claim that his attorney misadvised him that if he proceeded to trial the court would have to impose a life sentence by raising it in his Rule 3.850 motion. Ex. M at 8-9. He pursued this argument on appeal of the denial of the Rule 3.850 motion. Ex. N at 8-9. The First District Court of Appeal (1st DCA) affirmed per curiam. Ex. O. Thus, the claim is exhausted. It is not subject to a procedural bar.

In denying Petitioner's claim of ineffective assistance of counsel resulting in an involuntary plea, the circuit court recognized the two-pronged <u>Strickland</u> standard of review for the claims of ineffective assistance of counsel, and addressed its application in the context of guilty pleas, relying on <u>Hill</u>. Ex. M at 16-17. The court succinctly summarized Petitioner's claim of ineffective assistance of counsel for: "(1) failing to properly investigate and prepare and adequate defense;" "(2) coercing Defendant into pleading guilty to crimes he did not commit[;]" and (3) raising "a third ground of cumulative error." <u>Id</u>. at 16.

The circuit court provided a brief procedural history which this Court will reiterate to provide context for Petitioner's claim for relief:

> On September 20, 2010, Defendant entered an open plea of guilty in all four cases. (Ex. A) On October 20, 2010, the Court sentenced Defendant in case 2009-CF-03886 as a habitual felony offender to life in prison, with a ten-year minimum mandatory on one count of Home Invasion Robbery. (Ex. B at 4-5.) In case 2009-CF-04024, the Court sentenced Defendant as a habitual felony offender to life in prison on one count of Home Invasion Robbery and ten years in prison on one count of Battery on a Person Sixty-Five Years of Age or Order [sic], with a ten-year minimum mandatory. (Ex. C at 4-6.) In case 2009-CF-04414, the Court sentenced Defendant as a habitual felony offender to life in prison on one count of Armed Robbery, with a ten-year minimum mandatory. (Ex. D at 4-5.) In case 2009-CF-04775, the Court sentenced Defendant as a habitual felony offender to life in prison on one count of Home Invasion Robbery. (Ex. E at 4-5.) The Court ordered the sentence imposed in case 2009-CF-04775 to run concurrently with the sentence imposed in case

2009-CF-03886. (Ex. E at 6.) The Court
further ordered the ten-year minimum mandatory
sentence imposed in case 2009-CF-04414 to run
consecutively to the ten-year minimum
mandatory sentences imposed in cases 2009-CF-
04024 and 2009-CF-03886. (Ex. D at 6.) The
First District Court of Appeal affirmed the
judgments and sentences in Mandates issued on
September 7, 2011. (Ex. F.)

Ex. M at 15-16.

Importantly, the circuit court recognized that, with regard to
a claim of ineffective assistance of counsel arising out of the
plea process, a petitioner must satisfy the prejudice requirement,
meaning he must show that but for counsel's errors, there is a
reasonable probability that the petitioner would not have entered
a plea and would have insisted on going to trial. Ex. M at 16.
See Hill, 474 U.S. at 58. The circuit court further recognized it
should consider "the totality of the circumstance[,]" including the
likelihood of success at trial of a possible defense, the content
of the plea colloquy, and the difference between the maximum
possible sentence and the sentence imposed. Ex. M at 17 (citation
omitted).

The circuit court found Petitioner was not entitled to an
evidentiary hearing. Id. at 18-19. The circuit court relied on
the plea conference and Petitioner's representations at the
conference, including the fact Petitioner attested that pleading
guilty was his decision and no one had threatened, intimidated, or
coerced him. Id. at 18-19. During the plea colloquy, when
Petitioner said he had not had enough time to discuss the case and

- 14 -

possible defenses with counsel, the court afforded Petitioner additional time to discuss his plea and concerns with counsel. <u>Id</u>. at 19. After a recess, Petitioner informed the court he had sufficient time to speak with counsel and she had answered his questions. <u>Id</u>. Petitioner also told the court there were no witnesses to investigate or motions he wanted counsel to file prior to entry of the plea. <u>Id</u>. Petitioner expressed his satisfaction with counsel's representation. <u>Id</u>. Petitioner admitted guilt. <u>Id</u>.

In its post conviction review, the circuit court found Petitioner was "impermissibly attempting to go behind his plea," and denied his claim of ineffective assistance of counsel resulting in an involuntary plea. <u>Id</u>. To the extent Petitioner claimed his counsel failed to investigate, the circuit court determined Petitioner knew this prior to asking the court to accept his plea and was well aware of any of counsel's deficiencies prior to entering the plea. <u>Id</u>. at 20. To the extent Petitioner claimed his counsel failed to speak up and clarify the facts at the hearing, the circuit court found Petitioner spoke up at the hearing offering his own rendition of the facts, but Petitioner still decided to enter his plea. <u>Id</u>. at 20. As such, the circuit court concluded the plea was not involuntarily or unknowingly entered based on any failure to investigate. <u>Id</u>.

To the extent Petitioner was claiming he did not have a firearm during the home invasion robbery, the circuit court held,

based on Petitioner's own admission, the home invasion robbery was underway when Petitioner gave his co-defendant the firearm; therefore, Petitioner possessed the firearm during the commission of the offense. <u>Id</u>. Thus, the ten-year minimum mandatory term was well supported by the facts, even as alleged by Petitioner. <u>Id</u>. at 20-21. In conclusion, the circuit court found neither deficient performance nor prejudice and denied post conviction relief. <u>Id</u>. at 21.

To the extent Petitioner claimed he was coerced into pleading guilty to crimes he did not commit, the circuit court soundly rejected that claim as well. <u>Id</u>. at 21. Additionally, the circuit court found the record refuted Petitioner's contention that his counsel advised him that if he made an open plea, Petitioner would possibly receive less, but not more than, thirty years in prison. <u>Id</u>. The plea transcript shows, even based on Petitioner's recitation of the facts, he possessed a firearm. <u>Id</u>. at 21-22. Finally, the circuit court addressed Petitioner's assertion that he did not know that he would be sentenced to three consecutive ten-year minimum mandatory sentences. <u>Id</u>. at 22. The court said defense counsel could not have known what sentence Petitioner would receive based on an open plea. <u>Id</u>.

The circuit court found the record refuted Petitioner's contention that he did not know the exact nature of the charges or the consequences of his plea. <u>Id</u>. The court relied on the plea colloquy, and its thorough review of the charges and underlying

facts.  <u>Id</u>.  The court noted Petitioner was well aware of the consequences of his plea as demonstrated by the extensive colloquy between the trial court and Petitioner.  <u>Id</u>.  Also, the circuit court said Petitioner could not go behind his sworn statements that no one had made him promises or assurances concerning his plea and sentence and no one coerced him.  <u>Id</u>.  Finding Petitioner failed to demonstrate deficient performance or prejudice, the circuit court denied post conviction relief.  <u>Id</u>.

The 1st DCA affirmed this decision without opinion.  Ex. O. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the circuit court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and <u>Hill</u>.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and <u>Hill</u>, or based on an unreasonable determination of the facts.  As such, Petitioner's claim of ineffective assistance of counsel resulting in an involuntary plea is due to be denied.

In the alternative, Petitioner's claim is belied by the record.  The record demonstrates Petitioner signed the Plea of Guilty form.  It states, in pertinent part,

> I hereby enter my plea of guilty because I am
> guilty.  Before entering such plea of guilty,

I was advised of the nature of all the charges against me, the statutory offenses included within such charges, the range of maximum allowable punishments for each charge, all the possible defenses to each charge, and all circumstances in mitigation of such charges. I have been advised of all other facts essential to a full and complete understanding of all offenses with which I have been charged, and of all offenses to which I am entering this plea. **I have been advised of all direct consequences of the sentences to be imposed.**

I consider this plea to be to my advantage, and I have freely and voluntarily entered my plea of guilty. **I have not been offered any hope of reward, better treatment, or certain type of sentence to get me to enter this plea. I have not been promised by anyone, including my attorney, that I would actually serve any certain amount of time,** and I understand that any early release of any sort is not a part of this plea agreement and is entirely within the discretion of governmental agencies other than this Court. **I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea.**

Ex. A at 44 (emphasis added).

Regarding consultation with counsel, the plea form states:

I have had ample time to discuss this agreement with my attorney. My attorney and I have read this agreement regarding my guilty plea together in private, and my attorney has explained all portions of this agreement to my complete understanding and satisfaction. We have fully discussed all aspects of this case, including all possible defenses to all charges, including self-defense and any defense based upon any disability, disease, insanity, or intoxication. My attorney has given me the opportunity to ask questions and has answered all of my questions fully and completely. My attorney has taken all actions requested by me, or has explained to my

> satisfaction and agreement why such actions
> should not be taken, and I concur with my
> attorney's decisions in that regard. I am
> completely satisfied with the services
> rendered by my attorney on my behalf in this
> case.

Id.

The form also references a defendant's time for consideration
and reflection. Id. at 45. Petitioner acknowledged by his
signature that he entered the plea freely and voluntarily, the plea
form was true and correct in all respects, and the "form represents
the sole and complete agreement" and there were no other
agreements, representations, or promises made by Petitioner, his
attorney, the trial court, or any representative of the state. Id.
The form is signed by Petitioner, his attorney, the deputy clerk,
and the trial judge. Id.

The record demonstrates the following. Petitioner assured the
trial court he was entering his pleas with full knowledge and
consent. Id. at 89. When the court asked Petitioner if he
understood that the maximum sentence he could receive on the
charges was life imprisonment, he responded in the affirmative.
Id. The court specifically asked if anyone promised Petitioner "a
certain sentence or special treatment of any kind or reward, and
Petitioner responded, "[n]o." Id. at 92. Petitioner admitted his
guilt to the offenses and declared his satisfaction with counsel.
Id. at 94. The state presented a factual basis for the plea, and
after listening to Petitioner's rendition of some of the facts

underlying one of the crimes, the court still found a factual basis for the plea. Id. at 94-101.

During this plea proceeding, the court sought confirmation that Petitioner could read and write. Id. at 102. Petitioner said he could. Id. Petitioner told the court he had a chance to read and go over the plea form with his counsel. Id. Petitioner assured the court he could understand everything on the form. Id. Petitioner also attested that everything on the form was true and correct. Id. He told the court he signed the form. Id. After providing Petitioner with his rights and seeking confirmation that Petitioner wanted to plead guilty, the trial court found Petitioner was entering his plea freely, intelligently, and voluntarily "with a full and complete understanding of the nature of the offense, the maximum sentence and the consequences of his plea." Id. at 103.

Solemn declarations in open court carry a strong presumption of verity. Notably, Petitioner expressed complete satisfaction with his counsel at the plea proceeding and agreed no questions remained unanswered. Id. at 93-94. Petitioner also stated he had not been promised anything. Id. at 92.

At the sentencing proceeding, the trial court immediately asked the parties if they were in agreement that the minimum mandatory is ten years on each of the counts. Ex. A at 114. The prosecutor responded there were three minimum mandatories, and Petitioner was facing consecutive minimum mandatory sentences, amounting to serving a minimum mandatory term of thirty years in

prison.  _Id_.  The prosecutor clarified his response, stating only case number 09-4775 had no minimum mandatory because Petitioner did not possess a gun during the course of that crime.  _Id_. at 115. When Petitioner addressed the trial court concerning its imposition of sentence, he made no mention of the minimum mandatory terms he faced.  _Id_. at 117.  Also, he did not question the accuracy of the explanation of the mandatory terms or seek to speak to his counsel. Instead, he said he was never a bad person, he had issues dealing with drugs, and he never intended to hurt anyone.  _Id_.  In addition, he admitted he broke the law, and said: "I was going to take this case to trial, you know, on it to face my victims and apologize to them for what I had done."  _Id_. at 117-18.

The prosecutor presented argument that Petitioner pled to "four very egregious life felonies."  _Id_. at 121.  The prosecutor pointed out that the victim identified Petitioner in a photo spread as the person who had the gun in the house, although Petitioner disputed that fact (but admitted he had the gun outside, and gave it to his co-defendant after the co-defendant's girlfriend entered the house).  _Id_. at 123.

Also of import, Petitioner faced "repeat offender court."  _Id_. at 124.  The prosecutor asked that Petitioner be given life in prison with thirty years minimum mandatory.  _Id_.  Defense counsel reminded the court that Petitioner denied bashing people over the head and asked for mercy.  _Id_. at 124-25.

Defense counsel asked for mercy from the court:

Your Honor, the only thing we can ask is for Your Honor's mercy. He has pled to the mercy of the court. He understands that he is facing a substantial amount of time. And the tragedy is his record is not really bad. He is, though, a habitual offender because he does have a conviction within the specified amount of time for him to be classified that way.

I don't believe, to my understanding, his record is terribly worse than who was sentenced to 25 years with a ten-year minimum mandatory. We would just ask Your Honor to not sentence him to a life sentence, but to sentence him to some period of years so that after he has paid the consequences for his actions, which there was no excuse for, that he may have an opportunity to go back into society and live and learn from his experiences.

Id. at 125-26.

The court asked if the co-defendant received twenty-five years, and the prosecutor confirmed that fact and explained the co-defendant was "non ROC" and was the possessor of the gun in only one case. Id. at 126. The court asked if the ten-year minimum mandatory is pursuant to 775.087, and the prosecutor stated yes, and said the minimum mandatory terms must run consecutively by law. Ex. A at 127. The trial court found Petitioner's current offenses to be violent, but also recognized Petitioner did not have a violent past. Id. at 128-29. The court explained that the habitual felony offender law and the firearm law put Petitioner "in a totally different situation" from his co-defendant. Id. at 129.

The record shows Petitioner was fully aware, based on the information, amended information, and the Notice of Intent to Classify Defendant as an Habitual Felony Offender (Notice), he was facing time pursuant to Fla. Stat. § 775.084 as an habitual felony offender and was in repeat offender court due to his criminal history and status. <u>See</u> Ex. A at 10-11, 13, 23-24. By filing the Notice, the state ensured Petitioner was fully advised the Florida Sentencing Guidelines would not apply to his sentences. <u>Id</u>. at 13.

Taking all of this into account, as the trial court did, Petitioner's claim is due to be denied. He signed the plea form, which mentioned no sentencing cap or negotiated term of years. Petitioner provided sworn testimony that he had not been promised anything in return for his plea. He swore the plea form was true and admitted his guilt to the offenses. Based on the record, Petitioner was facing life in prison as an habitual felony offender who possessed a firearm during three of the offenses, and there was no measure of uncertainty in this regard.

At sentencing, Petitioner made no mention that his counsel had misled Petitioner to believe he would receive no more than thirty years in prison if he pled guilty. Instead, Petitioner said he was not a bad or violent person and had issues dealing with drugs. His counsel begged for mercy from the court, and defense counsel placed on the record what she perceived to be mitigating factors and argued for a sentence for a term of years rather than life.

There is a strong presumption that Petitioner's solemn declarations in open court are true. He has not overcome this presumption. Petitioner's claims of an involuntary plea based on alleged misadvice are without merit based on his sworn statements to the contrary. The record, including the signed plea form and the sworn testimony, support the trial court's holding denying Petitioner's claim for relief based on ineffective assistance of counsel.

Even if counsel had intimated at some point there was a chance Petitioner could plead guilty before the court and receive possibly less, but no more than five years above that which his codefendant received (twenty-five years), the record demonstrates that no confusion existed by the time of the signing of the plea form and the plea proceeding. Petitioner signed the plea form, which had no sentencing range or cap. Furthermore, Petitioner assured the court no promises had been made to him. Lee v. United States, 137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies; [j]udges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

The state asked the trial court to give Petitioner a life sentence, and defense counsel asked for mercy from the court. At sentencing, Petitioner never questioned the sentence he was facing, including the consecutive minimum mandatory terms, even after the

matter of consecutive minimum mandatory terms was raised and thoroughly discussed.

Petitioner admitted his guilt and made an open plea to the court. Although the defense may have hoped there was a chance of obtaining a more favorable sentence than life by making an open plea to the court and begging for mercy, as evinced by counsel's plea for a sentence for a term of years less than life, the trial court remained unpersuaded, and gave the sentence the state requested: life with the required, consecutive minimum mandatory terms.

Petitioner's current displeasure with his counsel's performance is directly related to Petitioner's dissatisfaction with his life sentence, a sentencing matter left to the sound discretion of the court, within the bounds of a lawful sentence. Petitioner's and his lawyer's representations, the prosecutor's representations at the plea proceeding, and the findings of the trial court accepting the plea, present a formidable barrier which Petitioner has not overcome. This Court presumes Petitioner's solemn declarations in open court have strong veracity, and they certainly have not been overcome by his allegation that he was misled by counsel's advice. Petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

Finally, for purposes of this opinion, the Court assumes arguendo Petitioner's counsel failed to advise Petitioner he was facing three, consecutive minimum mandatory terms of ten years

each, totaling a thirty-year minimum mandatory term, prior to his plea.[4] Based on a review of the record, the trial court, when accepting Petitioner's plea, failed to ensure Petitioner understood any mandatory minimum penalty provided by law. See Fla. R. Crim. P. 3.172(c)(1). Thus, any alleged deficiency in counsel's performance was not cured by the court. Indeed, the mandatory minimum penalty was not referenced in the plea form or mentioned during the plea proceeding.

Even assuming deficient performance for counsel's failure to advise Petitioner he was facing minimum mandatory penalties, satisfying the first prong of the <u>Strickland</u> test, the question remains whether Petitioner has satisfied the prejudice requirement. To answer this question and prevail, Petitioner must demonstrate defense counsel's constitutionally ineffective performance actually affected the outcome of the plea process. Under the circumstances at bar, it did not; therefore, Petitioner is not entitled to habeas relief. An explanation follows.

Petitioner was facing a life sentence, without parole, as an habitual felony offender, and the minimum mandatory terms were necessarily of no consequence in the decision-making process as to whether to plead guilty or go to trial. The record demonstrates

---

[4] The trial court is required to determine that a defendant, pleading to the court, understands the nature of the charge to which the defendant is pleading; the mandatory minimum penalty, if applicable; and the maximum possible penalty. <u>Harris v. McNeil</u>, No. 3:05-cv-306-J-32HTS, 2008 WL 3540845, at *10 (M.D. Fla. Aug. 12, 2008) (relying on Rule 3.172(c)(1), Fla. R. Crim. P).

Petitioner was fully aware that he was facing life in prison. Indeed, Petitioner, at the plea hearing, confirmed he was aware he was facing the statutory maximum sentence of life and no one had promised him a specific sentence. Beforehand, Petitioner received timely notice the state intended to seek habitual offender sentencing.[5] Significantly, a person sentenced as an habitual felony offender "is ineligible for parole or gain time." Lewis v. State, 625 So.2d 102 (Fla. 1st DCA 1993) (per curiam). See Johnson v. State, 9 So.3d 640, 641 (Fla. 4th DCA 2009) (recognizing ineligibility for parole from an HFO life sentence).[6]

In order to satisfy the prejudice prong, Petitioner must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Under these circumstances, the implementation of the minimum mandatory sentences had absolutely no effect on the length of sentence and the amount of time Petitioner will serve in prison. See Response at 20. Petitioner was facing a life sentence under the habitual felony offender act, which means he faced serving life

---

[5] The state filed notice of its intent to seek habitual offender status pursuant to Fla. Stat. § 775.084. Ex. A at 13. The state notified Petitioner it would rely on his convictions for sale or delivery of cocaine (July 5, 2005) and possession of cocaine (February 6, 2008). Id. Moreover, the state specifically stated it would seek to have Petitioner sentenced to life imprisonment. Id.

[6] There is no mention of the possibility of parole or any eligibility for gain time in the plea colloquy. The plea form stated early release was not a part of the plea. Ex. A at 44.

in prison, without parole or gain time,[7] and the minimum mandatory terms were of no consequence and could not prejudice his decision-making.

Thus, Petitioner cannot prove sufficient prejudice flowing from his counsel's alleged deficient conduct in failing to advise Petitioner of the minimum mandatory terms he faced prior to his plea. Petitioner's plea represents a voluntary and intelligent choice among the alternative courses of action open to Petitioner at the time he elected to enter the plea. Petitioner made an open plea, completely relying on the mercy of the trial court, in hopes of obtaining a sentence of a term of years, not the life sentence he was eligible for and the state was seeking. At sentencing, however, the trial court was not abundantly merciful, feeling constrained by the fact Petitioner was in reoffender court as an habitual felony offender, and he possessed a firearm during several violent offenses: "egregious life felonies." Ex. A at 121.

Petitioner contends he was not aware that if he pled guilty and the court showed mercy, he would still have to serve thirty years in prison, and had he known of the legal significance of the

---

[7] Eligibility for early release or parole is a collateral matter; therefore, not a matter upon which Petitioner can base a challenge to the voluntary and knowing nature of his guilty plea. See Johnson v. Dees, 581 F.2d 1166, 1167 (5th Cir. 1978) (per curiam) (citation omitted) (a trial court's failure to inform a petitioner he would not be eligible for parole and could be denied gain time as a serious multiple offender did not preclude the entry of a voluntary and intelligent guilty plea since such matters are collateral consequences).

mandatory terms, he would have proceeded to trial on the charges. The problem with this contention is that there was no real legal significance of the mandatory terms because Petitioner was facing and received a life sentence, a sentence he well understood he was facing whether he pled or went to trial.  Importantly, parole eligibility [or gain time eligibility] does not come into play because Petitioner was an habitual felony offender, not entitled to parole or gain time.  <u>See</u>  <u>Hill v. Lockhart</u>, 474 U.S. at 60 (discussing the lack of prejudice necessary to satisfy the second prong of <u>Strickland</u>, because the petitioner's mistaken belief concerning parole eligibility would have affected both the calculation of time to serve under the negotiated plea agreement but also the calculation of the time the petitioner would serve if he went to trial and was convicted).

In <u>McCullough v. Sec'y, DOC</u>, No. 3:13-CV-408-J-39JRK, 2015 WL 7076734, at *4 (M.D. Fla. Nov. 13, 2015), this Court rejected a claim of an involuntary plea based on the alleged ineffective assistance of counsel:

> the record shows that Petitioner pleaded guilty because he wished to do so, fully apprised that he was facing a maximum penalty of thirty years in prison as a habitual felony offender. <u>See</u> <u>United States v. Castro</u>, 736 F.3d 1308, 1314 (11th Cir. 2013) (per curiam) (the court was not convinced that the defendant would have rejected the plea agreement as he avoided prosecution of numerous offenses and faced a stiff sentence if he proceeded to trial), <u>cert</u>. <u>denied</u>, 134 S.Ct. 1331 (2014).

Similarly, in this case, the record demonstrates Petitioner pled guilty because he wished to do so, fully apprised he was facing a maximum penalty of life as an habitual felony offender, but hopeful the trial court would be merciful and sentence him to some term of years less than life.[8] It is clear there existed substantial evidence of Petitioner's guilt in all of the charged offenses. The state provided the factual basis for the offenses during the plea proceeding, and the evidence included a victim picking Petitioner out of a photo spread and positively identifying him as the perpetrator, a defendant in another case providing a sworn statement implicating Petitioner and his act of carrying a gun, co-defendants implicating Petitioner in the robbery of a store and the victim's identification of Petitioner through a photo spread, a victim positively identifying Petitioner using force during a home invasion robbery and his co-defendants implicating him, and finally, co-defendants stating Petitioner entered a residence with a gun and the victim picking Petitioner out of a photo spread as being the person who hit the victim with a gun. Ex. A at 94-97.

---

[8] There is no reasonable probability that Petitioner, being tried in re-offender court, was going to be sentenced to anything close to the time his non-reoffender court co-defendant received (twenty-five years with a ten-year minimum mandatory), particularly when the evidence showed the co-defendant only possessed a firearm on one occasion and Petitioner possessed a firearm on several occasions. Ex. A at 94-97, 125-26. Apparently, the victims and other witnesses were ready and willing to testify as to Petitioner's actions, including possessing a firearm for all but one of the charged offenses (09-4775).

Petitioner faced a very stiff sentence if he proceeded to trial with a wealth of evidence against him, including victims, co-defendants, and others naming, identifying, and implicating him in numerous violent crimes. The record demonstrates Petitioner wanted to show the trial court he was not really a bad person, never wanted to hurt anyone, had a non-violent criminal history, had an issue dealing with drugs, did some dumb things after getting in a financial bind, and was desirous of making an open plea in hopes of receiving mercy from the court. Id. at 117-18. As such, defense counsel asked the trial court to give Petitioner a sentence less than life and an opportunity to go back into society after serving a period of years. Id. at 126. Notably, defense counsel never stated a specific term of years and the plea form did not reference a term of years.

After due consideration, the Court finds Petitioner has not shown a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the advice Petitioner has alleged should have been provided. As noted by Respondents, "[w]ith or without the minimum mandatory sentence petitioner will still be in prison for the rest of his natural life." Response at 20. Petitioner knew he faced a maximum sentence of life, and he readily admitted that no one promised him a specific sentence for his open plea or threatened, intimidated, or coerced him into pleading guilty. Petitioner entered a sworn plea and has not overcome the formidable barrier put in place

through his sworn representations and the representations of his lawyer and the prosecutor, as well as the findings of the court accepting the plea. Indeed, he has not overcome the strong presumption of verity of his solemn declarations in the plea proceeding. Thus, Petitioner is not entitled to habeas relief.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**.

2. This action is **DISMISSED WITH PREJUDICE**.

3. The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[9] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

filed in this case.  Such termination shall serve as a denial of the motion.

DONE AND ORDERED at Jacksonville, Florida, this 18th day of March, 2019.



BRIAN J. DAVIS
United States District Judge

sa 3/6
c:
Gregory Dingle
Counsel of Record